IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KELLY HOBBS, | ) |
| Plaintiff, | ) |
| v. | ) No. 06 C 3795 |
| CITY OF CHICAGO, Et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Chicago's ("City") partial motion to dismiss. For the reasons stated below, we grant the City's partial motion to dismiss.

## BACKGROUND

Plaintiff Kelly Hobbs ("Hobbs") alleges that she is an African-American female. Hobbs alleges that in 1988 she began working for the City of Chicago Department of Transportation ("CDOT") as a Motor Truck Driver and in 1994 she was taken off truck duty and given the duties of the Lot Supervisor at the 4th district yard. Hobbs claims that although she was given the duties of a Lot Supervisor, she

retained the title of Motor Truck Driver.

According to Hobbs, in 1997 she applied for and interviewed for the position of Foreman, but the position was given to a Caucasian male instead of Hobbs. Hobbs also claims to have applied for and interviewed for a Foreman position in 2000, but that the position was given to Defendant Joseph Senese ("Senese"), a Caucasian male. In October 2004, Hobbs allegedly learned that Defendant Pat Quinn ("Quinn"), a Caucasian male, had been promoted to the position of Acting Foreman in August 2004. Hobbs claims that the Foreman position opening was never posted for CDOT employees.

In January 2005, Hobbs allegedly filed a charge of discrimination against the CDOT ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"). In the EEOC Charge, Hobbs alleged that she was denied a promotion to the Foreman position because of her race and gender. According to Hobbs, in April 2005, in retaliation for the filing of the EEOC Charge, her supervisors gave her an oral reprimand for an alleged violation of the "swipe in/out policy" and in May 2005, her supervisors gave Hobbs a three-day suspension for alleged insubordination. (Compl. Par. 28, 32).

Hobbs also alleges that in April 2005 her personal vehicle was vandalized in the CDOT parking lot and that Quinn's personal vehicle was near her vehicle. Hobbs claims that she complained to Senese about the vandalism, asserting that Quinn was a possible suspect for the crime. Senese allegedly dismissed the allegations made against Quinn and did not properly investigate Hobbs' vandalism

complaint. Hobbs also contends that in April 2005, she was assigned certain work duties in order to humiliate her and that Quinn and other Caucasian male employees repeatedly "congregated outside her office door . . . in order to intimidate her as she entered or exited her office." (Compl. Par. 30(b)).

Hobbs brought the instant action and includes in the complaint a claim brought against all Defendants alleging race discrimination and retaliation claims based upon a violation of 42 U.S.C. § 1981 ("Section 1981") (Count I), a claim brought against the City alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II), a Title VII gender discrimination claim brought against the City (Count III), a Title VII retaliation claim brought against the City (Count IV), and a claim brought against all Defendants alleging equal protection and gender discrimination claims based upon a violation of 42 U.S.C. § 1983 ("Section 1983")(Count V). The City now moves to dismiss Counts I and V to the extent that they are brought against the City. The City also moves to dismiss Hobbs' Title VII claims to the extent that they are based upon alleged harassment that occurred prior to the filing of the EEOC Charge and are based upon a failure to promote Hobbs in 1997 and 2000.

**LEGAL STANDARD**

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the

plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). The allegations of a complaint should not be dismissed for a failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Baker v. Kingsley*, 387 F.3d 649, 664 (7th Cir. 2004)(stating that although the "plaintiffs' allegations provide[d] little detail. . . [the court could not] say at [that] early stage in the litigation that plaintiffs [could] prove no set of facts in support of their claim that would entitle them to relief"). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege the "operative facts" upon which each claim is based. *Kyle v. Morton High School*, 144 F.3d 448, 454-55 (7th Cir. 1998); *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Under the current notice pleading standard in federal courts, a plaintiff need not "plead facts that, if true, establish each element of a 'cause of action . . . .'" *See Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)(stating that "[a]t this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint" and that "[m]atching facts against legal elements comes later"). The plaintiff need not allege all of the facts involved in the claim and can plead conclusions. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Kyle*, 144 F.3d at 455. However, any conclusions pled must "provide the defendant with at least minimal notice of the claim," *Kyle*, 144 F.3d at 455, and the plaintiff cannot

4

satisfy federal pleading requirements merely "by attaching bare legal conclusions to narrated facts which fail to outline the bases of [his] claims." *Perkins*, 939 F.2d at 466-67. The Seventh Circuit has explained that "[o]ne pleads a 'claim for relief' by briefly describing the events." *Sanjuan*, 40 F.3d at 251; *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998)(stating that "[p]laintiffs need not plead facts or legal theories; it is enough to set out a claim for relief").

## DISCUSSION

The City argues that the court should dismiss the Section 1981 and Section 1983 claims brought against the City because Hobbs has not alleged that the misconduct was caused by a City policy, practice, or custom. The City also argues that Hobbs cannot base a Title VII claim upon an alleged failure to promote Hobbs in 1997 and 2000 because such allegations are untimely. Finally, the City argues that Hobbs cannot base a Title VII claim upon alleged harassment that Hobbs suffered at work prior to the filing of the EEOC Charge.

I. Section 1981 and Section 1983 Claims Against City (Counts I and V)

The City argues that Hobbs has failed to allege facts under which the City could be held liable under Section 1981 or Section 1983. In order to establish municipal liability for a Section 1983 or Section 1981 claim, a plaintiff must show that "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005)(quoting *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978)); *see also McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)(applying *Monell* analysis to Section 1981 claims); *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 913 (7th Cir. 1999)(stating that the plaintiff bringing a Section 1981 claim had to "'show that the violation of his right to make contracts protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases'")(quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989)). This policy or custom can be shown: "'(1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.'" *Calhoun*, 408 F.3d at 379 (quoting *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995)); *see also McCormick*, 230 F.3d at 324 (applying three prong analysis from *McTigue* to Section 1981 claims).

    In the complaint, Hobbs fails to point to any allegations that indicate that the alleged misconduct by her supervisors was due to a City policy, practice, or custom. (Ans. 3). Instead Hobbs argues that the court should infer that a City policy, practice, or custom existed based upon the facts included in the complaint. Hobbs cites *Sims v. Mulcahy*, 902 F.2d 524 (7th Cir. 1990), (Ans. 3), in which the Court stated "'where the plaintiff alleges a pattern or a series of incidents of

6

unconstitutional conduct, . . . the courts have found an allegation of policy sufficient to withstand a dismissal motion.'" *Id.* at 542 (quoting *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981)). We first note that Hobbs has not alleged even in a conclusory manner that a City policy, practice, or custom was responsible for the misconduct alleged in the complaint. Hobbs also fails in her answer to the instant motion to point to any such allegations in the complaint concerning a City policy, practice, or custom. Thus, Hobbs has admittedly failed to even meet the standard argued by Hobbs that is based upon the portion of *Sims* quoted by Hobbs, which stated that "the courts have found an *allegation of policy* sufficient to withstand a dismissal motion." 902 F.2d at 542 (emphasis added).

In addition, in the portion of *Sims* that the Court referred to a "pattern or a series of incidents," the Court was referring to an informal custom of a municipal entity. *Id.* (stating that "[t]his type of practice, although lacking formal approval, can provide a basis for municipal liability since governmental customs, in contrast to official policies, do not receive formal approval through . . . [the local government's] official decision making channels, . . .; rather, they are simply persistent and widespread . . . practices of officials"). Hobbs has not included allegations in the complaint that would give rise to a reasonable inference that a City custom was responsible for the alleged misconduct. Hobbs alleges in the complaint that on three occasions, in 1997, 2000, and 2004, she did not get promoted to the Foreman position. Added to those isolated incidents are some allegations specifically concerning the retaliation taken against her by Senese and Quinn. Hobbs alleges, for

example, facts that indicate that Quinn vandalized her car, stood outside her office door to intimidate her, and brought unjustified disciplinary actions against her. Hobbs also alleges that Senese disregarded Hobbs' complaints about the vandalism and assigned her certain work duties in order to humiliate her. Nothing in the complaint indicates that Quinn or Senese was acting in accordance with a City policy or practice when they allegedly engaged in the misconduct.

The instant action is similar to *Latuszkin v. City of Chicago*, 250 F.3d 502 (7th Cir. 2001), in which the Court reviewed a district court's ruling dismissing a Section 1983 claim on the basis that the plaintiff had not properly alleged that his harm was the result of a municipal policy or custom. *Id.* at 504. The Seventh Circuit held that the district court improperly required the plaintiff to establish the existence of such a policy or custom, but ruled that the Section 1983 claim should have been dismissed regardless. *Id.* at 504-05. In ruling that the claim should have been dismissed, the Seventh Circuit noted that "[t]he complaint d[id] not allege any facts tending to show that [the defendant's] policymakers were aware of the behavior of the officers, or that the activity was so persistent and widespread that [the defendant's] policymakers should have known about the behavior." *Id.* at 505. The Court also stated that "nothing in [the plaintiff's] complaint suggests that" the conduct in question "should have come to the attention of [the defendant's] policymakers." *Id.* The Court concluded that "[w]ithout a link between the [defendant] and the alleged policy, no claim for municipal liability can survive," and the Court affirmed the dismissal of the Section 1983 claim. *Id.* at 505-06.

8

In the instant action, as in *Latuszkin*, there is an absence of allegations in the complaint that would indicate that there was any connection between the alleged misconduct of Hobbs' supervisors and a City policy, practice, or custom. There is also a lack of allegations that would indicate that any City policy makers knew of the alleged misconduct. The allegations in the complaint indicate that Hobbs believes that her supervisors intended to discriminate against her by declining to promote her and retaliated against her for complaining about them, but there is no indication that a City policy, practice or custom guided them in their alleged misconduct. Therefore, we grant the City's motion to dismiss the Section 1981 claims (Count I) and Section 1983 claim (Count V) brought against the City.

II. 1997 and 2000 Incidents

The City argues that Hobbs is barred from basing her Title VII claims upon the alleged failure to promote her to an open Foreman position in 1997 and in 2000 ("1997 and 2000 Incidents"). In order to bring a Title VII claim, a plaintiff in Illinois must first "file an employment discrimination charge with the EEOC within 300 days 'after the alleged unlawful employment practice occurred.'" *Stepney v. Naperville School Dist., 203*, 392 F.3d 236, 239 (7th Cir. 2004)(quoting in part 42 U.S.C. § 2000e-5(e)(1)). In the instant action, Hobbs filed the EEOC Charge on January 25, 2005, and thus the EEOC Charge was not filed within 300 days after the 1997 and 2000 Incidents. In regards to the 1997 and 2000 Incidents, Hobbs concedes that "those incidents of discrimination occurred outside the 300 day statute of limitations

required by the EEOC." (Ans. 5). Additionally, Hobbs does not argue that the statute of limitations was tolled and Hobbs explains that she did not intend to "include those incidents as part of her Title VII claims." (Ans. 5). Therefore, we grant the City's motion to dismiss Hobbs' Title VII claims to the extent that they are based upon the 1997 and 2000 Incidents.

III. Allegations of Harassment

The City argues that the allegations concerning harassment of Hobbs that occurred prior to the filing of the EEOC Charge cannot be a basis for Hobbs' Title VII claims because the allegations were not included in Hobbs' EEOC Charge. Before bringing a Title VII suit in federal court, a plaintiff must first file a timely charge with the EEOC "encompassing the acts complained of" in the federal court complaint. *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir. 1985). Only claims that are "like or reasonably related to the allegations of the charge and growing out of such allegations" may be included in the federal court complaint. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir.1976) (internal quotations and citations omitted). A claim in a federal court complaint is "like or reasonably related" to an EEOC charge if there is a factual relationship between the two, *Cheek v. Western & Southern Life Ins.,* 31 F.3d 497, 501 (7th Cir. 1994), and an EEOC investigation into the charge would likely reveal the claim made in the federal court complaint. *Id.* at 500. For a factual relationship to exist between the claim in the federal court complaint and an EEOC charge, the claims "must, at

minimum, describe the *same conduct* and implicate the *same individuals*." *Id.* at 501 (emphasis in original).

In the instant action, Hobbs alleges in Counts II and III that she suffered "harassment because of her race" and "harassment because of her gender," indicating that Hobbs is bringing hostile work environment claims as well as race and gender discrimination claims. (Compl. Par. 40, 44). Hobbs alleged in the EEOC Charge that she was "[d]enied [a] promotion to acting foreman [in] August 2004 because of [her] race . . . and . . . because of [her] sex . . . ." (1/25/05 Charge). Hobbs alleged in the EEOC Charge that in 2004 she was not selected for a Foreman position and that Quinn, a Caucasian male, was selected instead of her. There is no mention in the EEOC Charge of any harassment that Hobbs suffered at the workplace or any other facts from which such harassment could be inferred.

Hobbs argues that the court should liberally construe her EEOC Charge because she prepared it *pro se*. However, even if we liberally construed the allegations in the EEOC Charge we could not reasonably infer that she was asserting in the EEOC Charge that she was harassed. Hobbs even acknowledges the complete absence of allegations concerning harassment arguing that the EEOC Charge "facts should be read as harassing." (Ans. 5). The liberal reading accorded to *pro se* filings does not mean that a court can ignore the plain meaning of the words included in the filings and speculate that the *pro se* parties intended to include additional words in the filings or held some unspoken beliefs that were not expressed in the filings. The alleged discrimination concerning the failure to promote Hobbs, which is identified

11

in the EEOC Charge is not reasonably related to any allegations of harassment that she suffered at work.  Nor would it be reasonable to assume that the harassment would come to light during an investigation of the failure to promote Hobbs.  In addition, the alleged harassment involves conduct that is entirely separate from the conduct involved in the alleged failure to promote Hobbs.  Therefore, we grant the City's motion to dismiss the Title VII discrimination claims to the extent that they are based upon any alleged harassment of Hobbs that occurred at the workplace prior to the filing of the EEOC Charge.

## CONCLUSION

Based on the foregoing analysis, we grant the City's motion to dismiss the Section 1981 claims (Count I) and Section 1983 claim (Count V) brought against the City.  We also grant the City's motion to dismiss Hobbs' Title VII claims to the extent that they are based upon the alleged failure to promote Hobbs in 1997 and 2000 and to the extent that the Title VII claims are based upon alleged harassment suffered by Hobbs at work prior to the filing of the EEOC Charge.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   December  6, 2006