# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **KELLY HOBBS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 06 C 3795** |
| | ) | |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion for summary judgment.
For the reasons stated below, we grant the motion for summary judgment in its
entirety.

## BACKGROUND

Plaintiff Kelly Hobbs ("Hobbs") alleges that she is an African-American
female. Hobbs alleges that in 1988 she began working for the City of Chicago
Department of Transportation ("CDOT") as a Motor Truck Driver and in 1994 she
was taken off truck duty and given the duties of the Lot Supervisor at the 4th district

1

yard. Hobbs claims that although she was given the duties of a Lot Supervisor, she retained the title of Motor Truck Driver.

According to Hobbs, in 1997 she applied for and interviewed for the position of Foreman, but the position was given to a Caucasian male instead of Hobbs. Hobbs also claims to have applied for and interviewed for a Foreman position in 2000, but that the position was given to Defendant Joseph Senese ("Senese"), a Caucasian male. In October 2004, Hobbs allegedly learned that Defendant Pat Quinn ("Quinn"), a Caucasian male, had been promoted to the position of Acting Foreman in August 2004. Hobbs claims that the Foreman position opening was never posted for CDOT employees.

In January 2005, Hobbs allegedly filed a charge of discrimination against the CDOT ("EEOC Charge") with the Equal Employment Opportunity Commission ("EEOC"). In the EEOC Charge, Hobbs alleged that she was denied a promotion to the Foreman position because of her race and gender. According to Hobbs, in April 2005, in retaliation for the filing of the EEOC Charge, her supervisors gave her an oral reprimand for an alleged violation of the "swipe in/out policy" and in May 2005, her supervisors gave Hobbs a three-day suspension for alleged insubordination. (Compl. Par. 28, 32).

Hobbs also alleges that in April 2005 her personal vehicle was vandalized in the CDOT parking lot and that Quinn's personal vehicle was near her vehicle. Hobbs claims that she complained to Senese about the vandalism, asserting that Quinn was a possible suspect for the crime. Senese allegedly dismissed the

allegations made against Quinn and did not properly investigate Hobbs' vandalism complaint. Hobbs also contends that in April 2005, she was assigned certain work duties in order to humiliate her and that Quinn and other Caucasian male employees repeatedly "congregated outside her office door . . . in order to intimidate her as she entered or exited her office." (Compl. Par. 30(b)).

Hobbs brought the instant action and includes in the complaint a claim brought against all Defendants alleging race discrimination and retaliation claims based upon a violation of 42 U.S.C. § 1981 ("Section 1981") (Count I), a claim brought against the City alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (Count II), a Title VII gender discrimination claim brought against the City (Count III), hostile work environment claims brought against the City (Counts II, III, and IV), a Title VII retaliation claim brought against the City (Count IV), and a claim brought against all Defendants alleging equal protection and gender discrimination claims based upon a violation of 42 U.S.C. § 1983 ("Section 1983")(Count V).

On December 6, 2006, we granted the City's motion to dismiss the Section 1981 claims (Count I) and Section 1983 claims (Count V) brought against the City. We also granted the City's motion to dismiss Hobbs' Title VII claims to the extent that they are based upon the alleged failure to promote Hobbs in 1997 and 2000 and to the extent that the Title VII claims are based upon the alleged harassment suffered by Hobbs at work prior to the filing of the EEOC charge. Defendants now move for summary judgment on the remaining claims.

# LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party.

*Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).


**DISCUSSION**

I.  Title VII and Section 1981 Discrimination Claims (Counts I-III)

Defendants move for summary judgment on the Title VII gender and race discrimination claims (Counts II and III) and the Section 1981 discrimination claims (Count I).  A plaintiff bringing a Title VII discrimination claim seeking to defeat a defendant's motion for summary judgment can proceed under the direct method of proof or the indirect method of proof.  *Brewer v. Bd. of Trs. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007).  Under the direct method of proof, a plaintiff must present sufficient direct evidence or sufficient circumstantial evidence to establish a "'convincing mosaic' . . . that could permit a reasonable jury to conclude that the employer acted with discriminatory intent. . . ." *Id.*

Under the indirect method of proof, a plaintiff asserting a failure to promote claim must first establish a *prima facie* case by showing that: "'1) she is a member of a protected group; 2) she was qualified for the position sought; 3) she was rejected for the position; and 4) the employee promoted was not a member of the protected group and was not better qualified than the plaintiff.'" *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 737 (7th Cir. 2006)(quoting *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 732 (7th Cir. 2001)).  If the plaintiff establishes a *prima facie* case, the defendant is required to present a legitimate non-discriminatory reason for the

promotion decision. *Id.* If such a reason is provided, the burden shifts back to the plaintiff to show that the given reason is a pretext. *Id.* A court applies the same type of analysis that is applied to Title VII discrimination claims to Section 1981 discrimination claims. *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007)(stating that the Court has "applied the same prima facie requirements to both Title VII and § 1981 discrimination claims")*; Sublett*, 463 F.3d at 736 (stating that "'[a]lthough section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical'")(quoting *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 940 (7th Cir. 1996)).

A. Direct Method of Proof

Hobbs does not argue that she can prevail under the direct method of proof and instead contends only that she can prevail under the indirect method of proof. (Ans. 5). Even though Hobbs has not addressed the direct method of proof, we have considered all of the evidence in the record in its totality and it is clear that Hobbs cannot present sufficient direct evidence or sufficient circumstantial evidence to establish a "'convincing mosaic' . . . that could permit a reasonable jury to conclude that the employer acted with discriminatory intent. . . ." *Brewer*, 479 F.3d at 915. The evidence clearly shows that Quinn was promoted instead of Hobbs based upon Quinn's prior work experience, enthusiasm for work, and the fact that Quinn had favorably impressed Senese with his prior work performance. There is an absence of

evidence that shows any animus held against Hobbs due to her gender or race. Thus, Hobbs cannot prevail under the direct method of proof.

## B. *Prima Facie* Case Under the Indirect Method of Proof

Defendants acknowledge that Hobbs is a member of a protected class, that she had the requisite qualifications for a promotion to the Acting Foreman position, and that she was denied a promotion. Defendants contend, however, that the undisputed evidence clearly shows that Quinn was more qualified than Hobbs. Brian Murphy ("Murphy"), the First Deputy Commissioner, testified at his deposition that Senese told Murphy that Senese needed a foreman to help him with his duties and Murphy asked Senese if he had a recommendation for the position. (D SJ Ex. O 15). Hobbs has not pointed to sufficient evidence to draw into question Murphy's testimony. Although Hobbs attempts to dispute that "Murphy suggested that Senese immediately assign an acting foreman," (R SF Par. 25), Hobbs does not dispute the fact that Senese asked for a foreman to assist him or that Murphy asked Senese if he had a recommendation for the position. (R SF Par. 25). Neither does Hobbs dispute the fact that the Acting Foreman was going to be "required to report directly to Senese." (R SF Par. 25). Hobbs admits, pursuant to Local Rule 56.1, that Senese recommended Quinn for the Acting Foreman position and Murphy approved the recommendation. (R SF Par. 26, 27).

## 1. Prior Experience Working With Quinn

The undisputed evidence shows that the Acting Foreman was going to need to assist Senese in his duties and work directly with Senese. An individual that Senese believed he could work effectively with and in whom he had confidence would be a prime candidate for the Acting Foreman position. Hobbs admits, pursuant to Local Rule 56.1, that prior to Quinn's promotion to the Acting Foreman position, Senese had known Quinn for thirteen years, had worked with Quinn at one point "on the streets," and that Senese was impressed with Quinn's prior work performance and experience. (R SF Par. 28). Hobbs admits that Quinn served as an "E-man and a lot supervisor directly under Senese" between 1998 and 2004. (R SF Par. 29).

Hobbs does not dispute that Senese told Murphy that Senese recommended Quinn because Senese "had confidence in Quinn, . . . Quinn could handle the duties Senese needed assistance with and . . . Senese would be accountable for the actions of Quinn." (R SF Par. 26). Hobbs also admits that Senese recommended Quinn because of his "work ethics" and he "was willing to do the job required of him." (R SF Par. 30). Hobbs, on the other hand, admits that Senese "never worked with Hobbs on the streets" and Hobbs has not presented any evidence of prior work with Senese that favorably impressed Senese. (R SF Par. 28). Hobbs acknowledges that Senese would have been aware of the prior work performance of both Hobbs and Quinn due to the fact that Senese "had been supervising and reviewing the work of both Quinn and Hobbs since 1998." (R SF Par. 29). Thus, Quinn's prior work performance that made a favorable impression on Senese was one factor that made

Quinn more qualified than Hobbs.

### 2.  Work Experience and Enthusiasm For Work

Hobbs admits that Senese had extensive prior work experience, including special experience, such as operating the snow vehicles for the City's Snow Program implemented in the winter for snow removal ("Snow Program") for twenty years.  (R SF Par. 26-33); (D Ex. J 8).  Hobbs admits that Senese recommended Quinn in part because Quinn "was enthusiastic in his work," (R SF Par. 30), and that Quinn actually gained his experience in the Snow Program by volunteering to work in the program.  (R SF Par. 32).  On the other hand, Hobbs admits that "[a]t the time that Senese recommended Quinn for Acting Foreman, Senese had knowledge that Hobbs had previously refused to work in the Snow Program" and "never took that opportunity."  (R SF Par. 34-35); (D Ex. J 11-12).  Hobbs acknowledged at her deposition that she "only drove [a] snowplow on one occassion."  (D Ex. J 10-12).  Finally, Hobbs ackowledges that Quinn began working for the City as a Motor Truck Driver in 1986, that Hobbs was hired as a Motor Truck Driver in 1988, and, thus, Hobbs admits that Quinn had worked as a Motor Truck Driver longer than Hobbs.  (R SF Par. 20, 38).  Therefore, the undisputed evidence clearly shows that Quinn's prior work experience and enthusiasm for work made Quinn a more qualified candidate than Hobbs.

### 3.  Hobbs' Subjective Beliefs

Hobbs contends that she was better qualified than Quinn and that the City did not make a wise decision in regards to the factors it considered when promoting Quinn. Hobbs admits that, despite the fact that she believed she was more qualified than Quinn, she never saw Quinn's resume or his applicaion for a promotion. (R SF Par. 36). Hobbs also admits, pursuant to Local Rule 56.1, that she "'fe[lt] that [she has] so much more experience,' because she is 'college educated' and because Quinn '[could not] spell.'" (R SF Par. 37). We note that Hobbs avoids providing a direct response to the above facts, stating in response only that she admits that she is more qualified, is college educated, and that Quinn cannot spell. (R SF Par. 37). Defendants' assertion that Hobbs believed herself to be more qualified than Quinn because of his lack of education and poor spelling ability is deemed admitted, pursuant to Local Rule 56.1, due to Hobbs' evasive response and failure to provide citations to the record to support a denial. *See Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials that do not directly oppose an assertion are improper and thus the contested fact is deemed to be admitted pursuant to Local Rule 56.1); *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003)(stating that a denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence). Hobbs' subjective belief that she was more qualified than Quinn is not sufficient to create a genuinely disputed issue. *See Ost v. West Suburban Travelers Limousine, Inc.*, 88 F.3d 435, 441 (7th Cir. 1996)(stating that "[i]t is well settled . . . that a plaintiff's own opinions about her work performance or

qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions").  Also, we note that even if Hobbs' beliefs about Quinn's education and spelling ability were correct, there is no evidence that the City would have valued a college education or good spelling more than prior exceptional work performance and enthusiasm for work when evaluating the candidates for the Acting Foreman position.  The evidence clearly shows that the City valued other factors in making the choice.  Thus, the undisputed evidence clearly shows that Quinn was better qualified for the Acting Foreman position than Hobbs.

### C.  Legitimate Reason and Pretext Analysis

Defendants argue that, even if Hobbs could establish a *prima facie* case, Defendants have offered a legimate non-discriminatory reason for promoting Quinn and Hobbs has not pointed to sufficient evidence that shows that the reason is a pretext.  Defendants claim that they promoted Quinn instead of Hobbs because he was better qualified for the position than Hobbs and thus Defendants have provided a legitimate non-discriminatory reason for promoting Quinn instead of Hobbs.  Hobbs thus needs to show that Defendants' reason is a pretext.

In order to show that a defendant's reason is a pretext, "'a plaintiff must show more than that the employer's decision was incorrect; the plaintiff must also show the employer lied about its proffered explanation.'"  *Johnson*, 260 F.3d at 732 (quoting in part *Abioye v. Sundstrand Corp.,* 164 F.3d 364, 368 (7th Cir. 1998)).

1.  Wisdom of City's Decision to Choose Quinn

Hobbs argues that the City did not consider the proper facts in choosing Quinn instead of her. However, the Seventh Circuit has made it clear "that an employer is free to develop its own criteria in determining whom to promote. . . ." *Johnson*, 260 F.3d at 732-33. Hobbs takes issue with whether Quinn was better qualified than her because of his work in the Snow Program, and with whether Senese actually needed additional help from a foreman. (Ans. 8-9). Hobbs also questions the City's decision not to consider her longer experience as a lot supervisor. (Ans. 7). Hobbs argues that "Quinn lacked important qualifications for the position of [A]cting [F]oreman." (Ans. 7). In order to show pretext, a plaintiff must show that the employer lied about its reasons and "[e]ven if the reasons for [the plaintiff's] non-selection were mistaken, ill considered or foolish, so long as [the employer] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Thus, for example, Hobbs' opinion as to the amount of assistance that Senese should have been provided with at work is not sufficient for the pretext analysis. Hobbs' subjective belief that she was better qualified than Quinn and that the City did not consider what she deems were the proper factors for the promotion is not sufficient to show a pretext in this case. *See Johnson*, 260 F.3d at 733 (stating that the plaintiff's "subjective belief that she was better qualified than [the employee given the position] does not, without more, demonstrate pretext"); *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 560 (7th Cir. 2007)(stating that "[t]he focus of a pretext inquiry is whether the employer's reason is honest, not whether it

is accurate or wise"); *Blise v. Antaramian*, 409 F.3d 861, 867 (7th Cir. 2005)(stating that a courts "'do not sit as a superpersonnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices"). Thus, whether the City made the best choice in picking Quinn instead of Hobbs is not determinative for the pretext analysis. Hobbs has not pointed to evidence that draws into question the honesty of the reasons behind the City's choice for the Acting Foreman position. Hobbs argues that the promotion given to Quinn "was doled out arbitrarily," but the evidence clearly shows that Quinn was given the promotion based upon certain factors. (Ans. 5). The evidence shows that Quinn merely disagrees with the wisdom of considering those factors. Hobbs made clear at her deposition the factors that she believed "should account for something." (D Ex. J 143-44). However, the wisdom of the City's decision to promote Quinn is not at issue in this case.

### 2. Animus Based on Gender or Race

In order to show a pretext on the part of Defendant, Hobbs must show an animus against Hobbs specifically based upon her gender or race. *See Brewer*, 479 F.3d at 915 (stating that a plaintiff must show that the defendant held a "discriminatory reason in mind" connected to the plaintiff's protected class). Hobbs argues in her answer to the motion for summary judgment that Defendants' reason is a pretext. However, Hobbs fails to point to evidence that shows an animus against her because of her gender or race. (Ans. 8-9). The record is devoid of facts that

show that Defendants took any action against Hobbs because of her race or gender.

For example, Hobbs has not pointed to evidence of derogatory statements or conduct that she observed at work that show an animus against her due to her race or gender. Hobbs was asked at her deposition about the following list of individuals that she worked with: (1) Quinn, (2) Senese, (3) William Cheaks ("Cheaks"), (4) Paul Markowski, (5) Robert McDarrah, (6) Tom Powers, and (7) Tom Carney. (D Ex. J 12-14). Hobbs testified that none of the above listed individuals ever "made a derogatory comment to [her] about [her] race." (D Ex. J 12-14). Hobbs also testified that other than Quinn and Senese, none of the above individuals made derogatory comments regarding her gender. (D Ex. J. 14-16, 21-24). In regard to Quinn, Hobbs admits that her belief concerning Quinn's alleged statements is merely based upon a second-hand account she heard from another co-worker. (D SJ Ex. J 15). Hobbs does not assert that Quinn ever made a comment about her gender in her presence. In regards to Senese, the only comment regarding gender that she could recall was that Senese "on occassion" would tell her to send drivers home "if they couldn't drive stick shifts or things of that nature." (D Ex. J 21). Hobbs could not even recall if Senese actually used the word "women" in his order, and she assumed that Senese intended the comment to be a negative statement about women in general since Hobbs believed that the women drivers would have been the drivers affected by such a decision. (D Ex. J 21-22). Hobbs testified at her deposition that she could not remember any other comments made by Senese about her gender that she considered to be derogatory.

Hobbs also admits, pursuant to Local Rule 56.1, that Defendants did not choose Quinn becaue of his gender or race. Defendants assert in Paragraph 41 of their statement of material facts ("Paragraph 41") that "[i]n recommending Quinn, Senese did not consider Quinn's race or gender." (SF Par. 41). Hobbs responds by stating: "Admit that Senese and Murphy claim that they did not consider Quinn's race or gender." (R SF Par. 41). However, Defendants did not assert in Paragraph 41 that Senese and Murphy claimed certain facts. (SF Par. 41). Hobbs thus failed to directly respond to the facts asserted in Paragraph 41 and such an evasive denial is insufficient to properly dispute the facts. *See Jankovich*, 2003 WL 260714, at *5. Hobbs also failed to cite to any evidence to support a denial for Paragraph 41. (R SF Par. 41); *Dent*, 2003 WL 22025008, at *1 n.1. Thus, pursuant to Local Rule 56.1, it is deemed to be undisputed that "[i]n recommending Quinn, Senese did not consider Quinn's race or gender." (SF Par. 41).

The pretext analysis presents the fundamental flaw in Hobbs' case. The essence of her case is based upon a dissatisfaction with not being chosen for the Acting Foreman position. However, choosing an employee for a promotion that happens to be a man instead of another employee that happens to be a woman does not violate Title VII. The discrimination must be based upon an animus towards a plaintiff based upon the plaintiff's protected characteristic. In this case, Hobbs has failed to point to sufficient evidence that would allow for any reasonable inference of unlawful discrimination. Hobbs tries to characterize Senese as having unlawful intent, but Hobbs points to one isolated comment and Hobbs does not even remember

if Senese used the word "women."  Hobbs assumed that Senese intended the

comment to reflect negatively on the women employees because they were women.

Hobbs admits that she never heard Senese make any derogatory comment about her

race.  We also note that Senese was asked at his deposition about his recollection of

Hobbs' prior work performance.  (SAF Par. 39).  Senese candidly testified at his

deposition that he is not aware of any criticisms of Hobbs' prior job performance and

that he could not point out any negative aspects of Hobbs' work performance.  (SAF

Par. 39).  Senese's testimony about his positive opinion of Hobbs' prior work

performance further supports the conclusion that although Hobbs was qualified for

the Acting Foreman position, Senese chose Quinn because Quinn was better

qualified.  *See Blise*, 409 F.3d at 867(stating that courts "'do not sit as a

superpersonnel department' where disappointed applicants or employees can have

the merits of an employer's decision replayed to determine best business practices").

Thus, Hobbs has failed to establish that Defendants' reason for promoting Quinn was

a pretext.  Therefore, we grant Defendants' motion for summary judgment on the

Title VII discrimination claims and Section 1981 discrimination claims.  (Counts I-

III).


II.  Hobbs Work Environment Claims (Counts II-IV)

Defendants move for summary judgment on the hostile work environment

claims.  We note that although Hobbs does not specifically identify a hostile work

environment claim, Hobbs contends in response to Defendants' motion for summary

judgment that she has pled and has pointed to sufficient evidence of a hostile work environment claim. (Ans. 11). The hostile work environment claims are apparently based in part on the allegations in the complaint in Counts II and III relating to alleged race and gender discrimination referring to "harassment" by the Defendants "on the basis of race" and "because of her gender." (Compl. Par. 41, 44). Hobbs also appears to argue in her answer to the motion for summary judgment that she can pursue a hostile work environment claim based upon unlawful retaliation.

For a hostile work environment claim a plaintiff must establish that: (1) "she was subjected to unwelcome harassment," (2) "the harassment was based on her" protected class, (3) "the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere," and (4) "there is a basis for employer liability." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 940 (7th Cir. 2007). A plaintiff must show that the work environment was "'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002)(quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998)). In assessing a hostile work environment claim, a court should consider factors such as: (1) the "'frequency of the discriminatory conduct,'" (2) the "'severity'" of the conduct, (3) "'whether it [wa]s physically threatening or humiliating, or a mere offensive utterance,'" (4) "whether it unreasonably interfere[d] with [the plaintiff's] work performance," and (5) "the social context in which events occurred." *Hilt-Dyson*, 282 F.3d at 463 (quoting in

part *Faragher,* 524 U.S. at 786).

### A.  Work Environment

Hobbs claims that she was subjected to a hostile work environment.  Hobbs asserts that she was "subjected to numerous incidents of harassment at 103rd Street after she made a complaint of discrimination."  (Ans. 11).  Hobbs clarifies that the alleged harrassment "included vandalism to her car, changing her job duties, taking away responsibilities, intimidation by white male employees, manufacturing problems with her license causing her to lose pay, and assigning her to strenuous and undesirable jobs such as moving 'rollers.'"  (Ans. 11).  Hobbs has failed to point to sufficient evidence that indicates that any of the alleged harassment was due to her race or gender.  Also, as indicated above, Hobbs only makes reference to isolated comments by Quinn and Senese as to her gender and Hobbs admits that the above-mentioned individuals made no comments as to her race.  (D Ex. J 12-14).  Hobbs acknowledges that the comments allegedly made by Quinn about women were not made in her presence and instead were relayed to her by a co-worker.  *See Ezell v. Potter*, 400 F.3d 1041, 1048 (7th Cir. 2005)(stating that the Court has "characterized . . . 'second-hand' harassment as lesser in impact than harassment directed at the plaintiff").  In regard to the isolated comments allegedly made by Senese, Hobbs could not recall if Senese actually used the word "women" and Hobbs presumed that Senese intended to refer to women since Hobbs believed that the female employees were affected by the comments.  Hobbs has failed to point to sufficient evidence that

shows that the alleged harassment or the perceived harassment was sufficiently severe or pervasive to constitute a hostile work environment or that it would have reasonably interfered with her work performance.

### B.  Retaliation-Based Claim

Hobbs also argues that she can base a separate hostile work envoronment claim upon the alleged retaliation that she suffered due to the filing of her EEOC Charge.  Hobbs makes this clear by her contention that she suffered all of the harassment that is the basis of her hostile work environment claim "after she made a complaint of discrimination."  (Ans. 11).  Hobbs also references the same alleged harassment for her hostile work environment claim that she references for her retaliation claim.  (Ans. 9-10).

### 1.  Basis for the Hostile Work Environment Claim

As is indicated above, for a hostile work environment claim, a plaintiff must show that the hostile work environment was "based on her" protected class. *Kampmier*, 472 F.3d at 940.  The type of Title VII claim referred to in case law as a "hostile work environment claim" is based upon the recognition by courts that the overall effect of a hostile environment that is based upon an individual's protected characteristic can constitute "discriminat[ion] against an[] individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" in violation of 42 U.S.C. §

2000e-2(a).  42 U.S.C. § 2000e-2(a).  A hostile work environment claim is thus

based upon the anti-discrimination provision of Title VII in 42 U.S.C. § 2000e-2(a).

*See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)(explaining that a hostile

work environment would constitute "an unlawful employment practice" and thus

would violate 42 U.S.C. § 2000e-2(a)(1)); *Whittaker v. N. Ill. Univ.*, 424 F.3d 640,

645 (7th Cir. 2005) (indicating that a hostile work environment claim is based upon

42 U.S.C. § 2000e-2(a)(1)); *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th

Cir. 2002)(stating that for a hostile work environment claim the plaintiff must show

that "the harassment was based on her membership in a protected class" and citing

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751-52 (1998) which notes that the

phrase "hostile work environment" does "not appear in the statutory text" of 42

U.S.C. § 2000e-2(a)(1), but stems from 42 U.S.C. § 2000e-2(a)(1)).

While the judicially created hostile work environment claim is based upon the

anti-discrimination provision in 42 U.S.C. § 2000e-2(a)(1), a Title VII retaliation

claim is based upon the anti-retaliatory provision of Title VII in 42 U.S.C. § 2000e-

3(a).  42 U.S.C. § 2000e-3(a).  We note that the only case cited by Hobbs to support

her hostile work environment claims makes this conclusion clear.  In *Parkins v. Civil

Constructors of Ill., Inc.*, 163 F.3d 1027 (7th Cir. 1998), which was cited by Hobbs,

(Ans. 11-12), the Court specifically indicated that the plaintiff's hostile work

environment claim was premised upon the anti-discrimination provision in 42 U.S.C.

§ 2000e-2(a)(1) and, after resolving its analysis on the hostile work environment

claim, the Court separately analyzed the plaintiff's retaliation claim under 42 U.S.C.

§ 2000e-3(a).  *Id.* at 1032, 1038.


    2.  Elements Not Applicable to a Retaliation Claim

    The hostile work environment claim analysis, which focuses on the effects on the  "condition of [the plaintiff's] employment," is also not appropriately intertwined with a retaliation claim analysis since the Seventh Circuit has recently made it clear that the adverse employment action required to support a retaliation claim is not synonymous with the adverse employment action required to support a discrimination claim.  *See Roney v. Ill. Dep't. of Transp.*, 474 F.3d 455, 461 (7th Cir. 2007)(stating that "discriminatory acts proscribed by Title VII's anti-retaliation provision are not limited to those that affect the terms and conditions of one's employment" and that "the employer's challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity"); *Szymanski v. County of Cook*, 468 F.3d 1027, 1029 (7th Cir. 2006)(stating that "retaliation claims can be pursued based on actions that go beyond workplace-related or employment-related retaliatory acts and harm" and that "the provision extends to materially adverse nonemployment-related discriminatory actions that might dissuade a reasonable employee from lodging a discrimination charge").  In fact, the very title given to a "hostile work environment claim" makes clear that the claim is based upon the work environment and conditions at work.  A distinct analysis is employed in determining whether an action was taken that would discourage the filing of a complaint.  Thus,

to the extent that Hobbs is not basing her "hostile work environment claim" on

harrassment due to her gender or race and is instead basing the claim on harrassment

due to the fact that she filed an EEOC complaint, such a claim is synonymous with

her retaliation claim and is not a separate claim.  Therefore, we grant Defendants'

motion for summary judgment on the hostile work environment claims (Counts II-

IV).


### III.  Title VII and Section 1981 Retaliation Claims (Counts I and IV)

Defendants move for summary judgment on the Title VII and Section 1981

retaliation claims (Counts I and IV).  A plaintiff bringing a Title VII retaliation claim

who seeks to defeat a defendant's motion for summary judgment can proceed under

the direct method of proof or the indirect method of proof.  *Humphries v. CBOCS

West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007).  Under the direct method of proof a

plaintiff is required to establish: "(1) a statutorily protected activity; (2) a materially

adverse action taken by the employer; and (3) a causal connection between the two."

*Id.*; *see also Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir.

2006)(indicating that under the direct method of proof a plaintiff can present "'a

convincing mosaic of circumstantial evidence' as an alternative 'direct' method to

direct evidence of establishing the prima facie case").  Under the indirect method of

proof, a plaintiff must establish: "(1) that she engaged in protected activity; (2) that

she was subject to an adverse employment action; (3) that she was performing her

job satisfactorily; and (4) that no similarly situated employee who did not engage in

protected activity suffered an adverse employment action." *Burks v. Wisconsin Dep't. of Transp.*, 464 F.3d 744, 759 (7th Cir. 2006). If a plaintiff establishes a *prima facie* case, the defendant is required to present a legitimate non-discriminatory reason for the adverse employment action. *Sublett*, 463 F.3d at 740. If such a reason is provided, the burden shifts to the plaintiff to show that the given reason was a pretext. *Id.* The same analysis applied to Title VII retaliation claims is applied to Section 1981 retaliation claims. *Humphries*, 474 F.3d at 403 (stating in regard to a Section 1981 retaliation claim that the Court has "generally . . . applied the same prima facie requirements to discrimination claims brought under Title VII and section 1981").

Hobbs filed her EEOC Charge on January 25, 2005. Hobbs admits, pursuant to Local Rule 56.1, that Defendants retaliated against her due to the fact that she filed the EEOC Charge by: (1) giving her an oral reprimand, (2) giving her a three-day suspension, (3) taking away certain job duties and authority, (4) failing to investigate an accusation that Quinn had vandalized her car, (5) congregating outside her office, and (6) requiring her to show proof of a valid commercial driver's license. (R SF Par. 42); (Compl. Par. 24); (Ans. 10).


A. Direct Method of Proof

Hobbs argues that she can prevail under the indirect method of proof and does not contend that she can proceed under the direct method of proof. (Ans. 9). Nonetheless, we have considered all of the evidence in its totality and evaluated it

under the direct method of proof. There is insufficient direct evidence or circumstantial evidence to create a "convincing mosaic" of discrimination. *Sylvester*, 453 F.3d at 903. There is also insufficient evidence to show a causal connection between the alleged actions by Defendants and the filing of the EEOC Charge by Hobbs. Thus, Hobbs cannot prevail under the direct method of proof.

### B.  *Prima Facie* Case Under Indirect Method of Proof

Defendants argue that Hobbs has failed to point to a similarly situated employee who did not engage in protected activity and did not suffer an adverse employment action.  Hobbs identifies only Vince Tenuto ("Tenuto") as a similarly situated employee that was treated more favorably.  (Ans. 10-11).  Hobbs identifies Tenuto as a "white male motor truck drive [sic] who never made a complaint of discrimination. . . ."  (Ans. 10).  However, Hobbs testified that she does not know if Tenuto ever filed a discrimination charge with the EEOC against the City, (P Ex. 1 308), and Hobbs has not pointed to any evidence obtained during discovery that shows that Tenuto ever filed such a charge.  Thus, Hobbs has failed to show that Tenuto did not engage in protected activity under the anti-retaliation provision of Title VII.

In addition, Hobbs claims that she was given a three-day suspension by Quinn for insubordination relating to a discussion she had with Quinn.  Hobbs argues that although she was disciplined for insubordination, on another occassion Quinn told Tenuto to move his car from a no-parking area and Tenuto shouted at Quinn,

"'cursed him,' and questioned his authority." (Ans. 11). Hobbs contends that, unlike with her, Quinn never "wrote Tenuto up for his disrespect and insubordination." (Ans. 11). Hobbs also claims that Tenuto was caught sleeping in his truck at work and frequently violated the City policy that prohibited smoking in City buildings, but that Tenuto was not disciplined. However, Hobbs acknowledges that Quinn did not write up Tenuto for insubordination because, once Quinn told Tenuto to stop arguing and ordered Tenuto to move his car, Tenuto complied with Quinn's order and moved his car. (P Ex. 1 304); (Quinn Aff Par. 9). On the other hand, Hobbs admits she called Quinn a liar and Quinn cautioned her, as Quinn had cautioned Tenuto, that if she kept arguing she would be in trouble. (D Ex. J 222-24); (R SF Par. 60). Hobbs admits that she did not desist in her arguments, but rather went to her office and called Senese and continued to accuse Quinn of being a liar. (D Ex. J 222-24).

Hobbs also claims that Tenuto was never disciplined for sleeping in his truck or smoking at work. However, Hobbs was disciplined for insubordination, which is not the same as or similar to smoking or sleeping while on the job. Thus, Tenuto was not in a similar situation. Also, although Hobbs states that she believes that Tenuto was not disciplined for sleeping while on the job, she has not pointed to evidence that would draw into question Tenuto's statement that in November 2004 he was given a written reprimand and placed on a probationary period of eighteen months for sleeping on the job. (Tenuto Aff. Par. 6). Thus, Hobbs has failed to show that Tenuto was a similarly situated employee that was treated more favorably. Finally, although Hobbs asserts many other adverse actions that she suffered such as that

Defendants retaliated against her by taking away certain job duties and authority, Hobbs has not identified similarly situated employees that did not file an EEOC charge and did not suffer similar treatment. Thus, Hobbs has failed to meet her burden on the similarly situated employee step of her *prima facie* case.

### C. Reason for Actions and Pretext Analysis

In regards to the oral reprimand and three-day suspension, Defendants have indicated that Hobbs violated a City work policy in regards to ending a work shift and that the City disciplined Hobbs due to her insubordination, which also violated a City work policy. Defendants have thus offered a legitimate non-discriminatory reason for Defendants' actions. In regards to the alleged alterations in Hobbs' job duties and authority after Quinn became the Acting Foreman, Defendants claim that Quinn made decisions concerning Hobbs' duties and authority, as part of his duty to effectively control operations and in the normal course of his performance as Hobbs' supervisor, which is a legitimate non-discriminatory reason.

Hobbs also claims that she told Senese and Cheaks that Quinn vandalized her car and Senese did not properly investigate it. Defendants offer a legitimate non-discriminatory reason for Senese's actions, stating that Senese did not believe that an investigation was warranted based upon his prior knowledge of Quinn and the lack of evidence presented by Hobbs. Defendants also contend that Cheaks stated that he would look into the complaint and Hobbs does not point to evidence that shows that Cheaks failed to conduct any inquiry. Hobbs claims that employees congregated

outside her office, which intimidated her, but Defendants claim that the employees were allowed to be in the work area. Finally, in regards to requiring Hobbs to show proof of a valid commercial driver's license, Defendants contend that Mark Fornaciari, the General Superintendent of CDOT, received a list that identified Motor Truck Drivers that had invalid licenses and that Hobbs' name was one of the names on that list. (R SF Par. 69). Thus, Defendants have provided a legitimate non-discriminatory reason for asking Hobbs to show proof of her license.

Hobbs has failed to point to sufficient evidence that shows that any of the given reasons by Defendants for the alleged actions are a pretext. Hobbs fails to tie the alleged actions to her filing of the EEOC Charge. Nor has Hobbs pointed to sufficient evidence of an animus against her based on her filing of the EEOC Charge. Hobbs has not shown that any of Quinn's decisions about Hobbs' work duties and authority were out of the ordinary or that Hobbs knows what alterations Quinn made to other employees' duties or authority. (R SF Par. 43, 45, 50). For example, Hobbs also contends that Quinn told her to take a vehicle to the vehicle repair area and when the driver's side door of a vehicle would not open, Quinn told her to enter the vehicle through the passenger's side. (R SF Par. 44). However, Hobbs has not pointed to evidence that shows that Quinn's instruction to her was improper. Hobbs has not pointed to evidence that shows that the vehicle should have remained where it stood simply because the driver's side door would not open, nor has Hobbs pointed to evidence that shows that Quinn's instruction to her to enter the vehicle through the passenger's side was in any way connected to the filing of the EEOC charge. (R SF

27

Par. 44); *see also Blise*, 409 F.3d at 867 (stating that courts "'do not sit as a superpersonnel department' where disappointed applicants or employees can have the merits of an employer's decision replayed to determine best business practices").

We note that Hobbs also makes a cursory reference in her deposition about a separate folder kept about her in order to retaliate against her. (D Ex. J 49-50). However, Hobbs has not pointed to any other testimony that explains her reference in more detail. Neither has Hobbs pointed to evidence that shows that she had a basis for such an accusation or whether it was based upon her own speculation.

Hobbs also contends that employees congregated outside her office. However, Hobbs fails to point to any reason why the employees could not be in that work area. Hobbs also admits that she shared the office with approximately five other employees and that the office had one door, which offers a reason why employees would be standing near the door. (D Ex. J 291); (R SF Par. 67). Hobbs has not pointed to sufficient evidence that would enable a reasonable trier of fact to conclude that the individuals in question stood outside the office door because of the fact that she filed the EEOC Charge.

Finally, Hobbs claims that when Quinn became the Acting Foreman, he took away some of Hobbs' prior job duties and authority. Hobbs contended that before the Acting Foreman position was filled she "basically ran the office. . . ." (D Ex. J 87). However, Hobbs has not pointed to any evidence that shows that after the Acting Foreman position was filled with Quinn, Quinn would refrain from making some gradual changes in work duties or taking some of the supervisory duties for

himself since he was the Acting Foreman. Hobbs' contention that Defendants' reasons are a pretext are based upon Hobbs' speculation. Thus, based on the above, we grant Defendants' motion for summary judgment on the Title VII retaliation claim and Section 1981 retaliation claim. (Counts I and IV).

## IV.  Section 1983 Claims (Count V)

Defendants move for summary judgment on the Section 1983 claims (Count V). Hobbs contends that the alleged actions by Defendants "violate[d] her equal protection right to be free from gender discrimination and harassment. . . ." (Compl. Par. 53). The Equal Protection Clause provides individuals with "'the right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)(quoting in part *Harris v. McRae,* 448 U.S. 297, 322 (1980)). Defendants argue that there is no evidence that shows that the alleged actions taken against Hobbs were motivated by her gender or race. For a Section 1983 claim based upon the Equal Protection Clause, a plaintiff must specifically establish "that the defendants acted with a nefarious discriminatory purpose . . . and discriminated against h[er] based on h[er] membership in a definable class." *Id.* We agree that Hobbs has failed to point to sufficient evidence that shows that any of the alleged actions taken against her were based upon her race or gender. Hobbs also fails to dispute Defendants' argument on this issue, failing to address Defendants' argument at all in her answer to Defendants' motion for summary judgment. Therefore, we grant Defendants' motion

for summary judgment on the Section 1983 claims (Count V).

## CONCLUSION

Based on the foregoing analysis, we grant Defendants' motion for summary judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   June 21, 2007